THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | |
| v. | Crim. No. 4:87-cr-40070-JPG |
| RANDY THOMAS LANIER, BENJAMIN BARRY KRAMER, GEORGE PAUL BROCK, EUGENE ALBERT FISCHER, WILLIAM R. PALUMBO, and KAY DEE BELL, JR., | |
| Defendants. | |

## MEMORANDUM AND ORDER

This matter comes before the Court on plaintiff Benjamin Barry Kramer's motion to unseal filings in the court records of two codefendants—Randy Thomas Lanier and Eugene Albert Fischer (Doc. 1075). Like Kramer, Lanier and Fischer were sentenced to life in prison for the same or similar criminal activity. Specifically, Kramer asks the Court to unseal a sealed motion (Doc. 1042) and a sealed order (Doc. 1043) concerning Fischer, and a sealed motion (Doc. 1051), a sealed order (Doc. 1052), a sealed response (Doc. 1053), and a sealed supplemental response (Doc. 1055) concerning Lanier. A later order not filed under seal (Doc. 1057) reveals that the motion relating to Lanier (Doc. 1051) was a motion for a reduction of sentence pursuant to Federal Rule of Civil Procedure 35. Based on the unsealed order and hearsay statements from Fischer (who is now deceased), Kramer speculates that the other sealed filings relate to motions for sentence reductions under Rule 35 and that the event precipitating the Rule 35 motion in each case was a motion for an accounting of property seized from them and for return of that property similar to documents he has filed in his own civil case, *Kramer v. United States*, No. 15-cv-420-JPG-RJD. The Government has responded to the motion (Doc.

1076). The Court served the motion to unseal on Lanier and on Fischer's estate and allowed them an opportunity to respond, although neither has done so.

I.	**Law Regarding Access to Court Filings**

Judicial proceedings leading to a final decision and materials on which a judicial decision rests are presumptively in the public domain. *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006), *overruled in part on other grounds by TRP LLC v. Orix Real Estate Capital, Inc.*, 827 F.3d 689, 692 (7th Cir. 2016); *Methodist Hosps. v. Sullivan*, 91 F.3d 1026, 1031 (7th Cir. 1996); *cf. Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994). There is a common law right of access to documents filed in litigation. *Methodist Hosps.*, 91 F.3d at 1031; *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-99 (1978). "Public scrutiny over the court system serves to (1) promote community respect for the rule of law, (2) provide a check on the activities of judges and litigants, and (3) foster more accurate fact finding." *Grove Fresh*, 24 F.3d at 897; *see generally Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980). The common law holds that "court files and documents should be open to the public unless the court finds that its records are being used for improper purposes." *Grove Fresh*, 24 F.3d at 897. There are exceptions, however, to the general rule of access to court documents. For example, a court may seal records to protect trade secrets or other kinds of information deserving of long-term confidentiality. *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002); *see Nixon*, 435 U.S. at 598 (to protect business information that could harm litigant's competitive standing).

In addition to this common law right of access to court documents, there is a constitutional right of access to court records. *Grove Fresh*, 24 F.3d at 897; *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603 (1982). "The First Amendment presumes that there is

a right of access to proceedings and documents which have historically been open to the public and where the disclosure of which would serve a significant role in the functioning of the process in question." *Grove Fresh*, 24 F.3d at 897 (internal quotations omitted). "This presumption is rebuttable upon demonstration that suppression 'is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Grove Fresh*, 24 F.3d at 897 (quoting *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 510 (1984)). "[W]hen a court finds that the presumption of access has been rebutted by some countervailing interest, that 'interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.'" *Grove Fresh*, 24 F.3d at 898 (quoting *Press Enter.*, 464 U.S. at 510).

## II.     The Parties' Positions

Kramer suggests that he has a due process right of access to the sealed filings so he may explore the facts and legal authority in support of his desire for release from prison and that the Government somehow has an unfair advantage because it has access to the sealed documents. He suggests that any need for secrecy of the sealed documents has dissipated since the two co-conspirators were convicted more than thirty years ago and the sealed documents entered five to seven years ago. Kramer argues that the presumption of public access to Court filings requires unsealing of those documents. He argues that Government has not carried its burden of specifying with particularity that the documents fall into a category worthy of long-term confidentiality to preserve a value higher than public access and that the Court has not made the finding that the closure remedy is narrowly confined to protect that interest. He argues that Rule 35 motions, to which Kramer speculates the sealed documents relate, do not implicate the same privacy interests as presentence investigation reports, which are afforded secrecy.

In support of his argument, Kramer cites a 1985 case from the Court of Appeals for the

3

Ninth Circuit, *CBS, Inc. v. U.S. District Court for Central District of California*, 765 F.2d 823 (9th Cir. 1985). In that case, the defendant filed a sealed Rule 35 motion for a sentence reduction, and the Government filed a sealed response. *Id.* at 824. The court denied news media access to the sealed documents. *Id.* The Court of Appeals for the Ninth Circuit reversed, finding that a motion to reduce a sentence under Rule 35 concerns the same interests as the decision to sentence a defendant, an act which is imposed in a public proceeding. *Id.* at 826.

In response to Kramer's motion to unseal, the Government focuses on his alleged need for the sealed documents. It maintains that even if they concern sentence reductions pursuant to Rule 35, Kramer would not be eligible for such a reduction because he has not provided assistance, much less *substantial* assistance, to the Government, a condition precedent to a Rule 35 motion. Even if he had, the Government argues, he could not force the Government to make a Rule 35 motion; such a motion is within the Government's discretion. The Government further argues that the sealed documents have nothing to do with Kramer's civil case contesting the collection of the criminal monetary judgment against him. Finally, the Government argues that disclosure of the sealed documents would impair the Government's ability to investigate crimes. They assert that defendants provide confidential information based on the Government's assurances that the information will remain confidential to the extent possible (although they may be asked to testify at a public trial as part of the arrangement), and that the disclosure of such cooperation in this case will lead to a reluctance to cooperate by current and future defendants.

### III. Analysis

For the most part, the Government misses the mark. It is not Kramer's burden to show a good reason for needing access to the sealed documents; it is the Government's burden to show

that, if there is a qualified First Amendment right to the documents, maintaining them under seal is essential to preserving a higher value than public access to Court proceedings and that the decision to seal is narrowly tailored to serve that interest. *See Grove Fresh*, 24 F.3d at 897 (quoting *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 510 (1984)). The arguments that Kramer does not *need* the documents or that the documents would not be helpful to what Kramer actually *wants* do not speak to the relevant inquiries. Those arguments are irrelevant to the sealing questions.

The Government does, however, articulate a legitimate Government interest in not revealing information revealing Rule 35 sentence reductions. That interest is discussed extensively in *United States v. Doe*, 870 F.3d 991 (9th Cir. 2017), a case decided by the Ninth Circuit Court of Appeals that shows how circumstances have changed since the 1985 *CBS* opinion cited by Kramer. In *Doe*, the Court of Appeals assumed without deciding, as this Court does in the instant case, that there is a qualified First Amendment right of access to documents related to determining the length of criminal sentences. *Id.* at 998. The *Doe* court found, however, that the Government had rebutted the presumption of access because it had established a compelling interest in protecting the defendant and his family from harm and in preserving the Government's ability to conduct ongoing investigations. *Id.* at 998.

As for the danger to Doe and his family, the court noted the special circumstances of Doe's cooperation that placed him at heightened risk of danger from his cooperation with the Government: the involvement of a large, international drug cartel; the defendant's having lost a large amount of the cartel's drugs; the wide geographic area of the defendant's criminal conduct; the information he provided the Government; and the fact that Doe had likely been recognized by other suspects at a court appearance. *Id.* at 998-99. The court also took note of implied

threats to hurt Doe's family. *Id.* at 999. The court deferred to the Government's assessment that revealing cooperation posed a danger to Doe and his family because it was in the best position to know of the effects of Doe's cooperation. *Id.*

In addition, the court cited a report from the Committee on Court Administration and Case Management of the Judicial Conference of the United States ("CCACM Report") showing that disclosing a defendant's cooperation is not as innocuous as it seemed in 1985, when *CBS* was decided. On the contrary, the CCACM Report, based on a 2015 national survey of district judges, United States Attorneys, federal defenders, and others involved in the criminal justice system, "shed[] considerable light on the dangers faced by those who agree to cooperate with government investigations." *Id.* The CCACM Report noted hundreds of instances of harm or threats of harm, both economic and physical, to cooperating defendants and witnesses, including dozens of murders, during the three-year period examined in the survey. *Id.* It further noted that the advent of electronic case filing has made it easier to use court records to finger cooperators and to provide documentary evidence of their cooperation, which is often more convincing than an unsubstantiated claim. *Id.*

As for the impact disclosure would have on the Government's ability to conduct investigations, the court again deferred to the Government's assessment because it was in a better position to know the risks to its own investigations. *Id.* at 1000. There, the Government explained its institutional interest in maintaining the secrecy of cooperators: "The United States maintained a legitimate, structural interest in sealing the evidence of [Doe's] cooperation in order to protect the integrity of future criminal investigations and the willingness of future defendants to provide substantial assistance to the government." *Id.* (internal quotations omitted).

The Court believes that the *Doe* court correctly analyzed the nature and strength of the

Government's interest in maintaining the confidentiality of the identity of cooperating defendants. It further believes that the *Doe* court was correct in finding that sealing documents revealing cooperation is essential to preserving the Government's compelling interest in not impairing ongoing and future investigations, at least until the cooperating witness testifies in open court. At that point, the public interest in understanding the evidence contributing to a criminal verdict or to a criminal sentence would likely outweigh the interest in cooperator secrecy.

The Court is further mindful that, although the Government did not articulate this reason, there is evidence that the criminal enterprise involved in Kramer's case was no stranger to threats of violence. In fact, at Kramer's sentencing, a witness testified Kramer had threatened to kill Lanier, Fischer, and others if they cooperated with the Government and indicated he had done so in the past. Kramer Disp. 27:9-25, 29:13-14, 30:20-22, 31:17-24.[1] Additionally, the sentencing judge noted that threats against public officials were made during the trial. Kramer Disp. 144:5-13. That two of these alleged threats were against Fischer and Lanier specifically gives the Court pause, even decades after the end of the criminal enterprise.

In light of the compelling interest in non-testifying cooperator secrecy and the evidence

---

[1] On page 27 of the sentencing transcript, a witness testified: "And they, Ben Kramer was getting nervous and scared or however you want to describe him, itchy is what I would say, and they were talking and Randy Lanier said if they would lower the cap, they as in the government or whoever was prosecuting, would lower the cap on his sentence, that he would plead guilty. And that if they would lower it, or, and that if they would lower it low enough, he might would even cooperate. And that's what he said. He didn't say turn over or anything: he said cooperate. And Ben Kramer said, 'You little piece of shit. If you do, I'll kill ya.' And Randy Lanier looked at him and said, 'Don't threaten me. You don't scare me.' And then Randy Lanier went to Springfield and Ben Kramer, James Marren, Michael Canine, and Leroy Wisser were looking for a way to get someone into Springfield to watch over Randy to make sure that he didn't break or turn over." On page 29 of the sentencing transcript, the same witness testified: "It was said that if Mr. Fischer cooperated, he would be taken care of just like all rest." The sentencing judge did not necessarily find this testimony credible.

7

that Kramer threatened Fischer and Lanier, the Court turns to the specific documents at issue in this case.

As for the documents relating to Fischer, the Court will keep them under seal. In doing so, it neither confirms nor denies that they concern a sentence reduction or cooperation with the Government. If the Court were to acknowledge whether the documents related to a Rule 35 proceeding, that could in and of itself reveal whether Fischer was a cooperator even if the substance of any possible cooperation was not revealed. While it is true that the danger to Fischer himself from any cooperation with the government has dissipated in light of his death, the Government's compelling interest in keeping secret who did or did not cooperate remains compelling in the interest of future investigations. There is no way the Court could protect this compelling interest without keeping the documents sealed and refraining from commenting on their contents. The Court will therefore deny Kramer's motion to the extent it requests unsealing the documents relating to Fischer (Docs. 1042 & 1043).

As for the documents relating to Lanier, the ship has already sailed on acknowledging that Lanier received a Rule 35 sentence reduction. The Court included this information in its order granting the reduction because the order also contained the conditions of Lanier's supervised release, information historically in the public domain as part of a criminal sentence. Nevertheless, the Government's interest in keeping the details of Lanier's Rule 35 proceedings secret remains compelling for the same reasons that even identifying a cooperator is compelling: Government investigations will be hampered if defendants learn not only that their identity as a cooperator will be revealed but also that the *substance* of their cooperation will be revealed in *written* form. Additionally, there is evidence Kramer directly threatened Lanier if he cooperated, so there is a compelling interest in protecting Lanier's safety. Keeping the substance of Lanier's

cooperation secret is essential to preserve these interests, but the sealing order can be more narrowly tailored to that end. Accordingly, the Court will unseal (1) the Government's motion for a sentence reduction *with paragraphs 4-8 redacted* (Doc. 1051) and (2) the Court's July 30, 2014, order (Doc. 1052). The rest of the sealed documents in issue shall remain under seal (Docs. 1053 & 1055).

In sum, the Court finds the information that is to remain under seal is deserving of the secrecy under common law and First Amendment standards. Kramer will suffer no prejudice from this decision as his prospects for an early release from prison are unrelated to Fischer or Lanier.

### IV. Conclusion

For the foregoing reasons, the Court:

- **GRANTS in part** and **DENIES in part** Kramer's motion (Doc. 1075);

- **DIRECTS** the Clerk of Court to **UNSEAL** the Court's July 30, 2014, order (Doc. 1052); and

- **ORDERS** the Government to electronically file within fourteen days an unsealed copy of its motion for a reduction of Lanier's sentence (Doc. 1051) with paragraphs 4-8 redacted. The redacted motion shall be filed as a "Supplement" and linked to the original motion (Doc. 1051).

**IT IS SO ORDERED.**
**DATED: September 16, 2019**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

9