THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>  v.<br><br>BENJAMIN BARRY KRAMER,<br><br>      Defendant. | Crim. No. 4:87-cr-40070-JPG |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on defendant Benjamin Barry Kramer's motion for an accounting of the amounts collected under the Controlled Substances Act, 21 U.S.C. § 853(p), and applied toward satisfaction of his $60 million *in personam* criminal forfeiture judgment (Doc. 1086). That motion began as the Amended Complaint in a civil case, *Kramer v. United States*, 15-cv-420-JPG, but the Court construed that pleading to include a request for an accounting, which is more appropriately addressed in Kramer's criminal case. Here, the Court has jurisdiction to recover or enforce forfeitures under the Controlled Substances Act, 21 U.S.C. § 801 *et seq*. *See Fischer v. United States*, 96 Fed. Cl. 70, 76 (2011); 28 U.S.C. § 1355(a) ("The district courts shall have original jurisdiction . . . of any action or proceeding for the recovery or enforcement of any . . . forfeiture, pecuniary or otherwise, incurred under any Act of Congress."). The Government has responded to Kramer's motion with its accounting (Doc. 1090), and Kramer has replied to that accounting (Doc. 1095). The Court held a hearing on the motion by videoconference on September 23, 2020, and took the matter under advisement.

The calculation of the amounts collected pursuant to—and applied to—Kramer's criminal judgment of $60 million is complicated by the fact that the Government prosecuted conduct related to the conduct in this case in the Southern District of Florida and concluded civil

settlements with several nominee owners of forfeitable property in federal courts in Florida and California.  Thus, it is difficult to sort out when property was seized and/or otherwise acquired from Kramer or his nominees, what exactly was obtained by whom, and to which debt it should be applied.  The Court focuses, however, on the accounting of the money judgment *in this district* and the forfeitures *in this district* applied to that judgment.

Having reviewed the history of this case as set forth in its June 1, 2020, order (Doc. 1085) as well as both parties' briefing on the amounts the Government has seized and applied toward Kramer's $60 million criminal judgment, the Court finds the Government's accounting persuasive and supported by a preponderance of the evidence and the public records in this case and others.  That information shows the following amounts applied to Kramer's criminal judgment in this case:

|  | **Credit** |  | **Amount Due** |
|---|---|---|---|
| Criminal judgment |  |  | $60,000,000.00 |
| Refund of special assessment when Count 2 vacated | ($50.00) |  |  |
| Received from Gilbert Family Settlement Agreement | ($1,944,453.20) |  |  |
| Received through Inmate Financial Responsibility Program | ($970.35) |  |  |
| **Total Credits** |  | ($1,945,473.55) |  |
| **Balance Due** |  |  | $58,054,526.45 |

The credits for the refunded special assessment and the inmate financial responsibility program are fairly straightforward.  The settlement with the Gilbert Family requires more explanation.

2

As the Court noted in its June 1, 2020, order (Doc. 1085),[1] the Gilbert entities were the nominee holders of part of Kramer's real fractional partnership interest in LPC Associates, Ltd. ("LCP"), one of the members of the joint venture that owned the Bell Gardens Bicycle Club ("Bicycle Club"). The Court agrees with Kramer that his 1/3 real interest in LCP is not *equivalent to* Michael Gilbert's nominal interest (Michael Gilbert was the nominee owner at the time of the original seizure), but that nominal interest most definitely constituted a *part* of Kramer's real interest. What Kramer fails to understand is that, even though the Gilbert name was on an LCP interest, it was only as a nominee, and Kramer and his codefendants retained the real interest in LCP.[2]

When the Government sought forfeiture of the Gilbert entities' nominal interest, it settled with them in August 2003 to resolve the Gilbert entities' objections to the forfeiture. Whether the Gilbert entities' interests were not subject to forfeiture—say, because they were bona fide purchases for value without reason to believe the property was forfeitable—was settled by the settlement agreement. *See* 21 U.S.C. § 853(c) & (n)(6). The settlement forfeited 36.38% of the profit distributions from the Bicycle Club that the Gilbert entities claimed by virtue of their partnership in LCP. Reflecting this agreement, the Court ordered the following forfeited as substitute property:

> ALL THE PROFITS OF LCP ASSOCIATES, LTD., SEIZED OR
> RESTRAINED BY THE UNITED STATES MARSHALS SERVICE
> ATTRIBUTABLE TO THE OWNERSHIP INTEREST OF MICHAEL
> GILBERT IN LCP ASSOCIATES, LTD., AS OF THE TIME OF THE INITIAL

---

[1] The Court refers the reader to that order for details rather than setting them forth here.
[2] The Court offers this explanation only as clarification, but these facts have no impact on the question at issue here: how much the Government has collected and applied to Kramer's monetary judgment. How the Government arrived at that judgment and the property to be forfeited as substitute assets was questions decided by Judge Foreman long ago. To the extent Kramer is arguing that forfeiture of property held in the Gilbert entities' names should *not* be applied toward his monetary judgment, he should discuss that theory with the Government.

>SEIZURE OR RESTRAINT OF OWNERSHIP INTERESTS OR PROFITS OF
>LCP ASSOCIATES, LTD., PLUS ALL INTEREST EARNED THEREON,
>LESS THE AMOUNT OF $338,801.26.

Jmt. and Order of Forfeiture (Doc. 873 at 3).  The upshot of this was that as of September 24, 2003, the Government received by forfeiture the profits left after giving the Gilbert entities (except Michael Gilbert) approximately 63.62% of 9.1675% of the profits of LCP from the Bicycle Club that had been seized or restrained by the United States Marshals Service ("USMS"), plus interest on those funds and less $338,801.26, all still subject to other third-party claims.  But how much was that?

The evidence in the record shows that at that time the USMS had seized or restrained the Gilbert entities' 9.1675% interest in the earnings and interest of LCP from the Bicycle Club, and that amounted to $12,829,563.88 in cash or cash equivalents ("Impounded Proceeds").  Consent Decree ¶ 3 (Doc. 874 at 1).  Of that amount, 63.62% of the Impounded Proceeds (that is, $8,162,168.54) plus $338,801.26—a total of $8,500,969.80—were labeled the "Distributed Proceeds."  Consent Decree ¶ 4.1.b (Doc. 874 at 2).  However, the Gilbert entities were only entitled to get the profits, so expenses of $532,538.93 were deducted from that amount, leaving them to receive $7,968,430.87.  The balance of **$4,861,133.01** (Impounded Proceeds of $12,829,563.88 – $7,968.430.87 distributed to the Gilbert entities) was labeled "Restrained Proceeds" and was forfeited to the United States.  Consent Decree ¶ 4.1.1 (Doc. 874 at 3).

Now not all of that forfeited amount represented Kramer's interest; it also represented the interests of his codefendants.  Consequently, the Government allocated the forfeited amount among those individuals.  It started with the fact that Kramer had approximately a one-third interest in the drug proceeds invested in the Bicycle Club (another third being held by codefendant Randy Lanier, and the third third split between codefendants George Brock and

4

Eugene Fischer). Pursuant to the Consent Decree reflecting the Government's settlement with the Gilbert entities, the forfeited amount was to be applied to the judgments against Lanier, Kramer, and Fischer (Brock was still a fugitive and had not yet been convicted). Order (Doc. 873 at 2); Consent Decree at ¶ 4.1.1 (Doc. 874 at 3). Accordingly, the Government allocated the forfeited property among Lanier, Kramer, and Fischer in fifths, two-fifths allocated to Lanier and Kramer, respectively, because their shares were twice the size of Fischer's, and one fifth allocated to Fischer. This resulted in a credit toward Kramer's judgment larger than his proportionate share of the drug proceeds. Two-fifths of the forfeited property of $4,861,133.01 amounts to **$1,944,453.20**. the amount credited toward Kramer's $60 million judgment.

      Kramer argues that the Eleventh Circuit Court of Appeals' finding that the Bicycle Club was worth $150 to $200 million when it was seized belies the Government's calculations. *See United States v. Kramer*, 912 F.2d 1257, 1258 (11th Cir. 1990) (finding the Bicycle Club had "an estimated net value of $150 million"). Kramer is wrong. Just using rough numbers—all the Eleventh Circuit Court of Appeals was able to do—the numbers are consistent with the Government's accounting in this case. For example, if the Bicycle Club was worth $150 million and LCP had a 65% interest in the club, its interest was worth approximately $97.5 million. In turn, the Gilbert entities' 9.1% nominal interest in LCP would then be worth approximately $8.9 million. Understanding these are ballpark figures, it is not unreasonable to find the proceeds attributable to the Gilbert entities' nominal interest at any point in time was around $12 million, the amount found by Judge Foreman to be "Impounded Proceeds" subject to the Government's settlement agreement with the Gilbert entities. Kramer seems to ignore the fact that the Gilbert entities' nominal interest was only a percentage of the value of LCP. The remainder of Kramer's real interest in LCP was held by the other nominees—the California claimants and the Florida

5

claimants—whose interests were civilly forfeited in other cases before other courts.

In light of the foregoing, the Court **GRANTS** Kramer's motion for an accounting (Doc. 1086) and **FINDS** that, as of July 1, 2020, the date the Government filed its accounting, the Government had collected and applied $1,945,473.55 toward that judgment, and **$58,054,526.45** remained outstanding.  The Court denies Kramer's request for discovery from the Government.

The Court understands Kramer's concern with other property he once owned that he believes the Government seized from him yet has not forfeited or applied to his monetary penalties.  In fact, it appears the Government is not clear what happened to that property either and has been willing, and continues to be willing, to provide whatever information it has or can reasonably get about the disposition of that property.  It is clear, however, that it was not criminally forfeited in this case.  The Court applauds the parties' cooperation in this regard.  However, the bottom line is that *in this case*, the Government has rightfully forfeited as substitute property and applied only $1,945,473.55 toward Kramer's monetary judgment.

**IT IS SO ORDERED.**
**DATED:  December 2, 2020**

                                                        s/ J. Phil Gilbert
                                                       **J. PHIL GILBERT**
                                                       **DISTRICT JUDGE**